IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIZABETH CORNEL,<br><br>   Plaintiff,<br><br> vs.<br><br>STATE OF HAWAII; HAWAII PAROLING AUTHORITY; DEXTER KAUAHI, BADGE NO. 1199,<br><br>   Defendants. | Civ. No. 19-00236 JMS-RT<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 60 |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 60

## I. INTRODUCTION

Defendant Dexter Kauahi ("Kauahi"), a State of Hawaii deputy sheriff, arrested Plaintiff Elizabeth Cornel ("Plaintiff" or "Cornel") on February 2, 2018 based on a parole-violation arrest warrant issued in 2011 that stated on its face: "Maximum Parole Term: March 15, 2015."  ECF No. 64 at PageID # 455. Asserting that the arrest warrant was "stale and/or invalid," ECF No. 58 at PageID # 356, Cornel sued Kauahi and co-Defendants the State of Hawaii and the Hawaii Paroling Authority ("HPA") for false arrest and other state law claims, as well as under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments

to the U.S. Constitution.  *Id.* at PageID ## 359-68.  Defendants[1] now move for summary judgment under Federal Rule of Civil Procedure 56.  ECF No. 60.

Although some of Cornel's claims fail for other reasons, the case ultimately turns on whether Cornel—regardless of what parole term was printed on the arrest warrant—had actually completed her ten-year term of incarceration (including a term of parole) before she was arrested.  If she had already served her full sentence and her parole had been discharged when arrested, then some of her claims may have merit.  But if not, then her entire case fails.

After considering the summary-judgment record, there is no dispute of material fact that Cornel had *not* finished serving her sentence when arrested on February 2, 2018.  Rather, Cornel's parole had been suspended and, under Hawaii Revised Statutes ("HRS") § 353-66(c), time while parole is suspended does not count towards a sentence.  For that and other reasons, the court GRANTS Defendants' Motion for Summary Judgment.

## II.  <u>BACKGROUND</u>

The court considers this case at a summary-judgment stage after previously reviewing Kauahi's Motion to Dismiss.  *See* ECF No. 56 ("Order

---

[1] The court refers to the HPA, the State of Hawaii, and Kauahi collectively as "Defendants."

Granting in Part and Denying in Part Defendant Dexter Kauahi's Second Motion to Dismiss") (available at *Cornel v. Hawaii*, 2020 WL 3271934 (D. Haw. June 17, 2020)) (the "June 17, 2020 Order"). The June 17, 2020 Order—addressing only claims against Kauahi[2]—dismissed the Second Amended Complaint's ("SAC") state-law claims against Kauahi with leave to amend, but denied Kauahi's Motion to Dismiss regarding claims under 42 U.S.C. § 1983 because "it would [have been] improper to decide in [Kauahi's] favor at [that] motion-to-dismiss stage," as doing so would have "required consideration of evidence and an interpretation of the meaning of different factual allegations and of the proffered exhibits[.]" *Cornell*, 2020 WL 3271934, at *6. At that stage, the court was "unable to determine Cornel's actual parole discharge date, and thus [was] unable to decide whether she was arrested *after* she had been discharged from parole." *Id.* Now, however, the court is able to analyze that question based on an evidentiary record—and, as established to follow, it is undisputed that Cornel had not been discharged when she was arrested.

With that context, the court sets forth the factual and procedural background, construing the evidence in the light most favorable to Cornel where

---

[2] That is, the June 17, 2020 Order did not address claims against the State of Hawaii or the HPA.

materially disputed.  *See, e.g.*, *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) (reiterating that, at summary judgment, courts "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor") (citation omitted).

## A.    Factual Background

Kauahi is a sheriff employed by the State of Hawaii, Department of Public Safety.  ECF No. 58 at PageID # 354; ECF No. 61-3 at PageID # 425.  He arrested Cornel on February 2, 2018, by serving an arrest warrant issued by the HPA on May 23, 2011 for a parole violation.  ECF No. 58 at PageID # 356; ECF No. 61-3 at PageID # 427; ECF No. 64 at PageID # 455.

Understanding the circumstances of the warrant's issuance and Cornel's status when arrested is critical in assessing whether Defendants are entitled to summary judgment.  As with the June 17, 2020 Order, the court presents the key facts and evidence in a timeline format, but now with a more complete picture:

Aug. 12, 2005:    Cornel was sentenced in state court to 10 years of incarceration for, among other crimes, violating HRS § 712-1242 (promoting a dangerous drug).  The HPA set her minimum term of imprisonment at two years and six months.  ECF No. 58 at PageID # 355; *see also* ECF No. 61-4 at PageID # 429 (10 years of incarceration under Count 3 of the state charges).

4

Oct. 18, 2007:   Cornel was released on parole based on a September 20, 2007 Order of Parole.  ECF No. 58 at PageID # 356; ECF No. 61-6 at PageID # 432.  Her parole term was set to expire on March 15, 2015.  *See, e.g.*, ECF No. 61-1 at PageID # 417; ECF No. 61-5 at PageID # 431 (setting the "Maximum Term Release Date" of March 15, 2015).

The Order of Parole provided in part:

> "While on parole and until expiration of [Cornel's] maximum parole term or granted a final discharge, [Cornel] shall continue to be in the legal custody and control of the [HPA].  Should [Cornel] at any time violate any of the terms or conditions of [her] parole, [she] shall be subject to summary return to imprisonment."  ECF No. 61-6 at PageID # 432.

> "Should [Cornel] fail to keep the [HPA] informed as to [her] whereabouts . . . [her] parole may be suspended by the [HPA] pending knowledge of [her] whereabouts and return.  After such suspension [she] shall be deemed a parole violator and no part of the time during which [her] parole was suspended shall be credited towards [her] parole term."  *Id.*

One of the terms and conditions of her parole was:

> "You shall always keep you parole officer informed as to your whereabouts.  You shall notify and obtain the permission of your parole officer before changing your place of residence.  Such notification shall include exact new address and, if available, telephone number.  Your place of residence must meet with the approval of your parole officer."  *Id.* at PageID # 433.

5

| March 8, 2011: | The HPA received a letter dated March 1, 2011 from Cornel stating that her lease had been terminated and that she was looking for a new residence.  ECF No. 61-1 at PageID # 417; ECF No. 69-8 at PageID # 488.  Cornel gave the HPA a P.O. Box as a mailing address, a temporary physical address, and a new phone number. *See* ECF No. 69-8 at PageID ## 488-89; ECF No. 69-1 at PageID # 474. |
|---|---|

When the HPA tried to contact Cornel at the phone number she provided, a message stated that the subscriber did not receive incoming calls.  ECF No. 61-1 at PageID # 417.  When the HPA tried to reach Cornel through the P.O. Box that she provided, the mailing was returned as undeliverable.  *Id.*  And when the HPA conducted a field visit to the address that she provided, Cornel was no longer living there.  *Id.*

According to Cornel's declaration, she did not evade or attempt to avoid service or contact with the HPA after her March 1, 2011 letter to the HPA.  ECF No. 69-1 at PageID # 473.  From 2010 to 2018, she filed tax returns, registered a business, renewed her driver's license, and signed leases for residences in Kaneohe and Waimanalo. *Id.*  Cornel, however, admits that, after the March 1, 2011 letter, she did not further attempt to contact the HPA with her location information.  *Id.*; ECF No. 61-1 at PageID # 418.  That is, the HPA received no further communication from Cornel regarding where she was living or where she could be found.  ECF No. 61-1 at PageID # 418.

Cornel declares that she "was led to believe by my parole officer/HPA that it was unnecessary and that I was not required to do so as I was soon to be discharged from parole due to my compliance."  ECF No. 69-1 at PageID # 474.  Cornel, however, provides no admissible

6

evidence (e.g., testimony or documentation from her parole officer) to support her belief.

May 23, 2011:   The HPA issued a warrant for Cornel's arrest (the "re-take warrant") pursuant to HRS § 353-65.[3]  *See* ECF No. 61-1 at PageID # 418; ECF No. 64 at PageID # 455.  The re-take warrant directed a sheriff to arrest Cornel for violating parole by "fail[ing] to keep her Parole Officer informed of her whereabouts when she failed to notify of her change of address . . . ."  ECF No. 64 at PageID # 455.

Among other things, the re-take warrant stated on its face:  "Date of Parole:  September 20, 2007" and "Maximum Parole Term: March 15, 2015."  *Id.*

Sept. 29, 2011:   "Cornel's parole was retroactively suspended effective March 8, 2011."  ECF No. 58 at PageID # 356.  *See also* ECF No. 61-1 at PageID # 418 (HPA Administrator Tommy Johnson declaring that "parole was retroactively suspended back to March 8, 2011"); ECF No. 61-2 at PageID # 423 (HPA Chair Edmund Hyun declaring the same); ECF No. 61-14 at PageID # 443 (letter referring to the HPA's "previous decision of September 29, 2011 that suspended your parole effective March 8, 2011"); ECF No. 69-4 at PageID # 481 ("Parole suspended effective 3/8/11.").

Suspension of parole is governed by HRS § 353-66(c), which provides in relevant part:

"[I]f the whereabouts of any paroled prisoner is not known to the [HPA] because of the neglect or

---

[3] HRS § 353-65 provides in pertinent part that "[t]he power to retake and reimprison a paroled prisoner is conferred upon the [HPA which] may issue a warrant authorizing all of the officers named therein to arrest and return to actual custody any paroled prisoner."

failure of the prisoner to so inform it, the [HPA] may order the parole suspended pending apprehension. From and after the suspension of the parole of any paroled prisoner and until the paroled prisoner's return to custody, the paroled prisoner shall be deemed an escapee and a fugitive from justice, and no part of the time during which the paroled prisoner is an escapee and a fugitive from justice shall be part of the paroled prisoner's term."

Feb. 2, 2018:   Almost seven years after it was issued, Kauahi served the re-take warrant on Cornel and arrested her. ECF No. 58 at PageID # 356; ECF No. 64 at PageID # 455; ECF No. 61-3 at PageID # 427.

"As of February 2, 2018, Plaintiff 1) was still under supervision of the HPA; 2) was required to comply with the terms and conditions of her parole including keeping HPA informed of her whereabouts; 3) was in violation of the condition requiring her to notify HPA of her whereabouts; and 4) was still [subject to] pending parole revocation proceedings." ECF No. 61-2 at PageID # 423.

Kauahi declares that: "Based on my training and experience, if HPA recalls a warrant or does not want that warrant to be served, the original warrant [is] taken back and is no longer in the custody of the Sheriffs Division. Conversely, if the Sheriffs Division is in physical custody of an HPA warrant then that warrant is still outstanding and should be served." ECF No. 61-3 at PageID # 426.

He further declares that: "Warrants with Maximum Parole Term dates that have already expired are still considered outstanding and should be served if they are still in the possession of the Sheriffs Division." *Id.* "Based on my training and experience and because the

8

Sheriff[s] Division was in actual physical possession of the Re-take Warrant on February 2, 2018, I believed that the Re-take Warrant was still outstanding, valid, and needed to be served." *Id.* at PageID # 427.

After Kauahi arrested Cornel, he transported her to the sheriff's station for processing and then to the Community Correctional Center. ECF No. 61-3 at PageID # 427. Kauahi had no further interaction with Cornel after that. *Id.* Kauahi declares that he "had no input into or knowledge of her parole proceedings" and "had no input into or knowledge of where Plaintiff was incarcerated, how long she was incarcerated, what happened to her while she was incarcerated, when she was released from incarceration, or why she was released from incarceration." *Id.* Kauahi further declares that "[p]rior to February 2, 2018[,] I had never met Plaintiff and had no ill-will or malice toward Plaintiff." *Id.* at PageID # 428.

"After Plaintiff's arrest on February 2, 2018, the duration of her suspension was added to her Maximum Parole Term date which was then extended to February 9, 2022." ECF No. 61-2 at PageID # 423.

Cornel was re-incarcerated from February 2, 2018 until April 19, 2018. ECF No. 58 at PageID # 357.

Feb. 9, 2018:    Cornel was issued a "Notice of Right to Pre-Revocation Hearing" form that advised her of her right to appear at a preliminary hearing and present evidence relevant to her alleged parole violation for "fail[ing] to notify [the HPA] of her change of address from 1420 Alapai St. #306 Honolulu, Hawaii to an unknown address." ECF No. 61-9 at PageID # 436. The form stated that "[y]ou may waive your right to pre-revocation hearing. If you do so, you will remain confined until the [HPA] hears your case." *Id.* at PageID # 437. Cornel waived her right to a

pre-revocation hearing and acknowledged that she would be held in confinement pending a full hearing. *Id.*

Cornel was also issued a "Notice of Hearing, Rights for Revocation Hearing and Request for Legal Counsel." ECF No. 61-10 at PageID # 438. On the form, she requested assistance from the state public defender, and asked to "personally appear at the hearing." *Id.* at PageID # 439. A hearing was set for March 15, 2018. ECF No. 61-11 at PageID # 440.

March 14, 2018:   Cornel's public defender submitted a motion to dismiss the pending parole revocation proceedings. ECF No. 61-1 at PageID # 419. Given that motion, the parole revocation hearing was continued to April 19, 2018. ECF No. 61-12 at PageID # 441; *see also* ECF No. 61-1 at PageID # 419.

April 19, 2018:   The HPA held a parole revocation hearing, and heard Cornel's motion to dismiss. ECF No. 61-2 at PageID # 423; ECF No. 61-15 at PageID # 446. Cornel was present at the hearing with her attorney. ECF No. 61-2 at PageID # 423.

At the hearing, the HPA decided *not* to revoke Cornel's parole—that is, it did not revoke her parole for her prior failure to keep the HPA informed of her whereabouts. The HPA, however, "needed to review its prior [September 29, 2011] decision to suspend her parole." *Id.* Cornel was released from custody, and was returned to parole. *Id.*

June 28, 2018:   "[T]he HPA finished its review and retroactively rescinded its prior [September 29, 2011] decision to suspend [Cornel's] parole. This decision had the effect of restoring [Cornel's] Maximum Parole Term date to March 15, 2015." *Id.* at PageID ## 423-24.

10

In a letter to Plaintiff, HPA Chair Hyun confirmed that "[b]ased on the board's findings during the [April 19, 2018] hearing, the alleged parole violation was dismissed and you were continued on parole." ECF No. 61-14 at PageID # 443. The letter then explained:

> However, at that time, the board needed to further review its previous decision of September 29, 2011 that suspended your parole effective March 8, 2011. Upon completion of its review, the board has decided to rescind the previous decision to suspend your parole . . .
>
> As a result of the board's decision, the expiration of your maximum term . . . has been restored to March 15, 2015, and you are immediately discharged from further parole supervision. Attached, please find your Order of Discharge from Parole.

*Id.* As the letter indicated, an Order of Discharge was issued to Cornel and attached to the letter. The Order of Discharge certified that Cornel has served her sentence. *Id.* at PageID # 444. Although issued on June 28, 2018, it was dated "this 15th day of March 2015." *Id.*

HPA Chair Hyun attests that "[e]ven though the decision to discharge Plaintiff from Parole was not made until June 28, 2018, HPA decided to prepare the Order of Discharge [from parole] using the effective date of her parole discharge, March 15, 2015." ECF No. 61-2 at PageID # 424.

Cornel has produced no evidence that contradicts Hyun's statement or the controlling documents. That is, there is no evidence that Cornel was actually discharged from parole on March 15, 2015 (as opposed to being discharged *effective* March 15, 2015).

11

June 29, 2018:     Hyun issued a written ruling addressed to Cornel titled "Hearing on Motion to Dismiss Parole Violation Proceedings," stating that "[f]ollowing a hearing on April 19, 2018, Motion to Dismiss Parole Violation Proceedings is granted."  ECF No. 61-15 at PageID # 446.  It confirmed that "[y]our maximum sentence . . . was extended by [the] period of your suspension.  However, upon review of your case on June 28, 2018, the [HPA] decided to rescind [its] previous decision suspending your parole and you are to be immediately discharged from parole."  *Id.*

## B.  Procedural Background

### 1.  The SAC

Plaintiff filed this suit on October 25, 2018 in the First Circuit Court of the State of Hawaii.  ECF No. 1 at PageID #2.  Defendants removed the action to federal court on May 7, 2019, after a First Amended Complaint, ECF No. 1-1, added federal claims under 42 U.S.C. § 1983.  ECF No. 1 at PageID #2.  Plaintiff filed the SAC on August 28, 2019 to properly name Kauahi as a Defendant as the sheriff who served the warrant.  *See* ECF Nos. 13, 17.

The SAC alleged five counts:  (1) false arrest/false imprisonment; (2) intentional infliction of emotional distress ("IIED"); (3) negligent infliction of emotional distress ("NIED"); (4) gross negligence; and (5) "Unlawful seizure and Detention."  ECF No. 17 at PageID # 162-70.  Count Five included both a state law claim for false arrest, and federal claims under 42 U.S.C. § 1983 for unlawful

seizure and denial of due process in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution.  *See id.* at PageID # 169-170.  The SAC alleged Counts One, Two, and Three against the HPA (but not against Kauahi or the State), and Counts Four and Five against all Defendants.  *Id.* at PageID ## 162-70.

Among other assertions, the SAC alleged that "[a]t the time HPA requested and obtained the Arrest Warrant[,] HPA had no authority to execute the Arrest Warrant as Ms. Cornel had already been discharged by the HPA."  ECF No. 17 at PageID # 159.  According to the SAC, on February 2, 2018, Kauahi "served a stale and/or invalid warrant, nearly seven years old, [and] as such . . . lacked probable cause and/or made an unlawful arrest based on an invalid warrant on its face."  *Id.*

### 2. *The June 17, 2020 Order*

Addressing Kauahi's Motion to Dismiss, the June 17, 2020 Order dismissed the state law false arrest and gross negligence claims against Kauahi because he has a qualified privilege under Hawaii law.  *See Cornel*, 2020 WL 3271934, at *4.  A nonjudicial governmental official, however, waives the qualified privilege if the official was "motivated by malice and not by an otherwise proper purpose[.]"  *Id.* (quoting *Medeiros v. Kondo*, 55 Haw. 499, 504, 522 P.2d

13

1269, 1272 (1974)).  Because the SAC failed to allege any facts regarding malice, the court dismissed the state law claims against Kauahi, but did so without prejudice—the court granted Cornel leave to amend to attempt to allege facts indicating that Kauahi had waived the qualified privilege.  *See id.* at *5 ("The court will allow Plaintiff to file a third amended complaint to allege—if she has a legitimate basis to do so—specific facts that plausibly indicate that Kauahi was 'motivated by malice and not by an otherwise proper purpose.'") (quoting *Medeiros*, 55 Haw. at 504, 522 P.2d at 1272)).

Further, the court denied Kauahi's Motion to Dismiss the § 1983 claims because some of the SAC's allegations, assumed as true, were sufficient to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Id.* at **5-8.  Under a plausible reading of the SAC, Kauahi's parole had actually been discharged on March 15, 2015, meaning she was not on parole when Kauahi arrested her on February 2, 2018.  *Id.* at **6-7.  "This uncertainty about whether Cornel had been discharged from parole before her arrest preclude[d] the court from dismissing federal claims against Kauahi at [the motion-to-dismiss] stage."  *Id.* at *7.

### 3. *The Third Amended Complaint ("TAC") and the Motion for Summary Judgment*

Cornel filed the TAC on July 8, 2020.  ECF No. 58.  The TAC added additional facts regarding the nature of the May 23, 2011 arrest warrant, alleging

14

that Cornel's parole had not yet been suspended or revoked on May 23, 2011 when the arrest warrant was issued.  ECF No. 58 at PageID # 356.[4]  The TAC, however, added very few, if any, new factual allegations directed at whether Kauahi acted with malice for purposes of waiving a qualified privilege.  The TAC also changed which Defendants are sued for each of the Counts.[5]  Specifically, the TAC alleges the following Counts:

- Count One ("False Arrest and False Imprisonment") against all Defendants.

  Count One alleges (1) state law claims for false arrest, false imprisonment, and violating the Hawaii Constitution, and (2) a claim, for violation of the Fourth Amendment against the HPA, the State of Hawaii, and Kauahi, which the court construes as being made under 42 U.S.C. § 1983.  ECF No. 58 at PageID # 359-60.

- Count Two ("Intentional Infliction of Emotional Distress") against the HPA.

  Count Two alleges that the HPA intentionally imprisoned Cornel "even though it had previously released Ms. Cornel from all charges and had no authority to imprison her."  *Id.* at PageID # 360-61.

---

[4] Like the SAC, the TAC also still alleges that Cornel's parole was retroactively suspended effective March 8, 2011.  ECF No. 58 at PageID # 356.

[5] The TAC names the HPA as a Defendant as "a division of the State of Hawaii Department of Public Safety."  ECF No. 58 at PageID # 354.  The TAC names the State of Hawaii as having the HPA "under its jurisdiction and control," *id.*, and as Kauahi's employer, such that the State allegedly "is liable for the acts and omissions of Dexter Kauahi under the doctrine of *respondeat superior*."  *Id.*  And, although not clearly stated, Kauahi is apparently sued in both his individual and official capacities.  The court refers to the State of Hawaii, the HPA, and Kauahi in his *official* capacity as the "State Defendants."

- Count Three ("Negligent Infliction of Emotional Distress") against the HPA.

  Count Three alleges that the HPA "acted negligently when it imprisoned Ms. Cornel without authority and without notice to Ms. Cornel as to the length of her imprisonment, and without reasonable notice and opportunity for a hearing to challenge the circumstances of her incarceration and delay in her arrest." *Id.* at PageID # 362-63.

- Count Four ("Gross Negligence") against all Defendants.

  Count Four alleges that the Defendants "acted indifferently towards and [have] breached their . . . duties to Plaintiff by imprisoning Ms. Cornel without authority and without notice as to the length of the imprisonment." *Id.* at PageID # 365.

- Count Five ("Unlawful Seizure and Detention") against all Defendants.

  Count Five alleges that "the Plaintiff was illegally arrested and held in custody . . . continuously from February 2, 2018 through April 19, 2018." *Id.* at PageID # 366. It alleges there was an "unreasonable delay in executing an arrest warrant for a technical infraction" and a failure "to provide the Plaintiff with reasonably prompt notice and right to a hearing concerning her February 2, 2018 arrest and incarceration, so that she could challenge and present objections to the circumstances." *Id.* at PageID # 366-67. And it alleges a violation of the "fourth, fifth and fourteenth amendments to the Constitution of the United States and 42 U.S.C. §1983." *Id.* at PageID # 368.

The TAC seeks compensatory and punitive damages, a declaration that Defendants' acts were illegal and unconstitutional, and an injunction prohibiting Defendants from "engaging in the practice of arresting individuals on stale and/or outdated arrest warrants." *Id.* at PageID # 368-69.

Defendants filed their Motion for Summary Judgment on August 19, 2020.  ECF No. 60.  Plaintiff filed her Opposition on October 12, 2020, ECF No. 70, and Defendants filed a Reply on October 19, 2020, ECF No. 71.  The court decides the matter without a hearing under Local Rule 7.1(c).

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with

17

specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

   "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor") (citations omitted).

## IV. <u>DISCUSSION</u>

   This Order picks up where the June 17, 2020 Order left off—the court first addresses the state law claims that the prior Order dismissed against Kauahi without prejudice, and as were re-alleged in the TAC.  The court then considers the

federal § 1983 claims that were partly analyzed in that Order, with the addition of an evidentiary record.  Finally, the court addresses the remaining state law claims against the HPA and the State of Hawaii.

**A.     The TAC's State Law Claims Against Kauahi Fail; Kauahi is Protected by a Qualified Privilege**

"Under Hawaii law, it is well established that a nonjudicial government official performing a public duty enjoys the protection of a qualified privilege."  *Kealoha v. Hawaii*, 2006 WL 2052331, at *5 (D. Haw. July 20, 2006) (citing *Towse v. Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982), and *Medeiros*, 55 Haw. at 500, 522 P.2d at 1272).  A state official loses the qualified privilege if the "official in exercising his authority is motivated by malice and not by an otherwise proper purpose."  *Medeiros*, 55 Haw. at 504, 522 P.2d at 1272.  Thus, "[f]or a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose." *Edenfield v. Estate of Willets*, 2006 WL 1041724, at *12 (D. Haw. Apr. 14, 2006) (citations omitted).  And whether an official is *motivated* by malice is assessed subjectively.  *Id.* at *13.

Here—even without assessing whether the TAC cured the pleading deficiencies that the June 17, 2020 Order identified—the record contains no

evidence, much less "clear and convincing" evidence, that Kauahi "was motivated by malice and not by an otherwise proper purpose." *Id.* at *12. Kauahi attests that "[w]arrants with Maximum Parole Term dates that have already expired are still considered outstanding and should be served if they are still in the possession of the Sheriffs Division." ECF No. 61-3 at PageID # 426. He attests that he "believed that the Retake Warrant was still outstanding, valid, and needed to be served." *Id.* at PageID # 427. And he attests that prior to arresting Cornel he "had never met Plaintiff and had no ill-will or malice toward Plaintiff." *Id.* at PageID # 428. He has thus met his initial burden under Rule 56(c)(1) to demonstrate an absence of a material fact as to malice. *See, e.g.*, *Celotex*, 477 U.S. at 323-24.

In response, Cornel offers only her declaration and a few documents tending to indicate that she was not in hiding after 2011 until her arrest, and explaining why she failed to inform the HPA of her whereabouts. *See generally* ECF No 69-1. But she has pointed to no evidence contradicting Kauahi's statements that he did not know her, he believed the warrant was valid, and had no ill-will or malice towards her when serving it. She offers no direct evidence of malice, nor does she offer any indirect evidence, such as a pattern of misconduct that might give rise to an inference of malice. Cornel thus fails to meet her corresponding burden at summary judgment to come forward with specific

20

evidence establishing a genuine dispute of material fact.  *See, e.g.*, *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (1986); *Anderson*, 477 U.S. at 247-48.  It is undisputed that Kauahi retains his qualified privilege under Hawaii law.

Accordingly, the court GRANTS summary judgment in favor of Kauahi as to the state law claims in Counts One, Four and Five for false arrest/false imprisonment and gross negligence.[6]

## B.   Federal Claims

### 1.   *The State Defendants Are Not "Persons" Under § 1983*

Section 1983 provides a cause of action against "[e]very *person* who, under color of [law]" causes "a deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws" (emphasis added).  But it is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71

---

[6] Count One also mentions the Hawaii Constitution, ECF No. 58 at PageID # 360, although Cornel does not argue that it provides a remedy.  Defendants assert that there is no private cause of action for a violation of rights guaranteed under the Hawaii Constitution.  ECF No. 60-1 at PageID # 387.  The court, however, need not decide this open question.  *Compare Kaahu v. Randall*, 2018 WL 472996, at *7 (D. Haw. Jan. 18, 2018) ("Courts in Hawaii have declined to recognize a direct private cause of action for damages resulting from the violation of rights guaranteed under the provisions of the Hawaii Constitution.") (citing cases) *with Pitts v. Tuitama*, 2017 WL 3880653, at *8 n.12 (D. Haw. Sept. 5, 2017) ("It is unclear whether Hawaii recognizes a private cause of action for damages for violation of rights guaranteed under the Hawaii State Constitution.") (citing cases).  Even if Hawaii law would permit a claim, Kauahi would retain a qualified privilege.  Furthermore, as analyzed to follow, there was no illegal seizure under the Fourth Amendment or false arrest under Hawaii law, and a corresponding claim under the Hawaii Constitution would likewise fail.

(1989).  This principle also applies to state agencies.  *See, e.g.*, *Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004) ("[S]tate agencies are also protected from suit under § 1983.").  Indeed, this court has applied these principles to dismiss § 1983 claims against the HPA and its officials for alleged constitutional violations in implementing parole decisions.  *See Ramsey v. Haw. Paroling Authority*, 2012 WL 518486, at *2-3 (D. Haw. Feb. 14, 2012), *aff'd*, 561 F. App'x 636 (9th Cir. Mar. 12, 2014) (mem.).  Neither the State of Hawaii, the HPA, nor Kauahi in his official capacity are amenable to suit for damages under § 1983.[7]

A state official sued in an official capacity, however, can be a "person" under § 1983 for purposes of prospective injunctive relief.  *See Will*, 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).  But Cornel does not specifically seek injunctive relief against Kauahi.  And to the extent the TAC seeks prospectively to enjoin "said defendants from engaging in the practice of arresting

---

[7] The State Defendants did not attempt to invoke Eleventh Amendment immunity—an analysis distinct from whether they can be "persons" under § 1983.  This may be because they waived Eleventh Amendment immunity by removing the suit from state court.  *See Walden v. Nevada*, 945 F.3d 1088, 1094 (9th Cir. 2019) ("[A] State defendant that removes a case to federal court waives its [Eleventh Amendment] immunity from suit on all federal claims in the case[.]"), *petition for cert. docketed*  (U.S. July 31, 2020) (No. 19-1315).

individuals on stale and/or outdated arrest warrants," ECF No. 58 at PageID # 368-69, the TAC does not name a state official from the HPA for purposes of such prospective injunctive relief.  *See, e.g.*, *Morelli v. Hyman*, 2020 WL 252986, at *7 (D. Haw. Jan 16, 2020) (dismissing claim for injunctive relief because "the [complaint] does not name [the] individual state official as a defendant—let alone any non-judicial individual state official who is allegedly violating Plaintiff's due process rights").

In any event, "[i]n order to have standing to obtain prospective injunctive relief, a plaintiff must show some substantial likelihood that the past challenged official conduct will recur in the future."  *Rapp v. Disciplinary Bd. of Haw. Sup. Ct.*, 916 F. Supp. 1525, 1531 (D. Haw. 1996) (citations omitted).  To do so, a plaintiff "must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief."  *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) (citation omitted).  "A 'reasonable showing' of a 'sufficient likelihood' that plaintiff will be injured again is necessary."  *Id.* (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 108 (1983)).  Cornel cannot meet that standard.  She has completed her sentence and her parole was discharged—to be arrested again on a re-take warrant would require her to be convicted and incarcerated for a new crime, and then be accused of violating a

parole condition.  This remote and speculative possibility is insufficient to allow a claim for prospective injunctive relief.  *See LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985) (reasoning that the *Lyons* requirement of a "threat of repeated injury" was "beyond reasonable belief given the remote possibility that Lyons would once again violate the law and incite an unjustifiable response by the Los Angeles police.") (citing *Lyons*, 461 U.S. at 107 n.8).[8]

Accordingly, the court GRANTS summary judgment as to claims brought under § 1983 against the State Defendants in Counts One and Five.

### 2.    *Personal Capacity § 1983 Claims Against Kauahi Also Fail*

Although Kauahi cannot be liable in his official capacity under § 1983, he may be sued for damages under § 1983 in his personal capacity.  *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009) ("[A] plaintiff may pursue a 42 U.S.C. § 1983 claim against a state official seeking to impose *personal* liability on that official . . . .  To succeed

---

[8] What's more, a claim for injunctive relief against a state official would fail because, as analyzed to follow, Cornel's constitutional claims have no merit.  That is, there is no evidence that the HPA has a "practice of arresting individuals on stale and/or outdated arrest warrants," as alleged.  ECF No. 58 at PageID ## 368-69.  And the doctrine of *Ex Parte Young*, which permits suits against state officials for prospective injunctive relief, is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past[.]"  *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).

on the merits of such a claim, a plaintiff must show only that 'the official, acting under color of state law, caused the deprivation of a federal right.'") (quoting *Hafer*, 502 U.S. at 25).  The TAC alleges claims for false arrest (an illegal seizure) under the Fourth Amendment, and for due process violations under the Fourteenth Amendment.  The court analyzes each in turn.[9]

   a. *Fourth Amendment illegal seizure*

  As relevant here, the Fourth Amendment protects a right against "unreasonable searches and seizures," which "shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."  U.S. Const. amend IV.  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001)).  And although parole-

---

[9] Count Five briefly mentions Defendants being responsible for "cruel and unusual punishment."  ECF No. 58 at PageID # 366.  The parties, however, have not argued any Eighth Amendment standards and it is unclear whether Cornel intended to assert such a claim.  In any event, assuming the Eighth Amendment could apply to a parolee, such a claim would fail because Cornel had produced no evidence of an Eighth Amendment violation.  *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (reiterating the settled rule that "'the unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment") (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

violation arrests are different than other arrests,[10] "it is clear that parole searches and seizures must 'pass muster under the Fourth Amendment test of reasonableness.'" *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 883 (9th Cir. 2007) (quoting *Latta*, 521 F.2d at 248-49). "Under the general Fourth Amendment approach, [courts] assess reasonableness by examining the totality of the circumstances and balancing the intrusion on the individual's privacy against the promotion of legitimate governmental interests." *Id.*

Applying that test, Cornel was not falsely arrested. Her arrest was reasonable under the Fourth Amendment. This conclusion is clear—crystal clear—because her parole had not been discharged before she was arrested on February 2, 2018. It is undisputed that the HPA had suspended her parole on September 29, 2011. Under Hawaii law, the HPA has the power to "order the parole suspended pending apprehension." HRS § 353-66(c). And "[f]rom and after the suspension of the parole of any paroled prisoner and until the paroled prisoner's return to custody, the paroled prisoner shall be deemed an escapee and a fugitive from justice, and no part of the time during which the paroled prisoner is

---

[10] "[P]arole is subject to revocation for reasons that would not permit the arrest and incarceration of other persons." *Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir. 1975) (en banc).

an escapee and a fugitive from justice shall be part of the paroled prisoner's term."
*Id.*

Cornel's arrest was reasonable even though the re-take warrant was served almost three years after the 2015 parole expiration date printed on the warrant. That is, although the warrant says that Cornel's parole ended in 2015, her 2018 arrest was valid because in actuality—and despite what was printed on the warrant—her parole term was suspended and thus did not end on March 15, 2015. When Cornel was arrested on February 2, 2018, she was still under supervision of the HPA and was still in violation of parole conditions. ECF No. 61-2 at PageID # 423. She had not finished serving her 10-year sentence. After her arrest, "the duration of her suspension was added to her Maximum Parole Term date[,] which was then extended to February 9, 2022." *Id.*

Cornel argues that, given the March 15, 2015 date on the face of the warrant, Kauahi lacked probable cause to arrest her in 2018. But under Ninth Circuit law, "probable cause is not required to arrest a parolee for a violation of parole." *Sherman*, 502 F.3d at 884 (quoting *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991)). Rather, "if a parole officer *reasonably believes* a parolee is in violation of [her] parole, the officer may arrest the parolee." *United States v. Rabb*, 752 F.2d 1320, 1324 (9th Cir. 1984) (emphasis added). This lower

27

standard applies because "[r]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Sherman*, 502 F.3d at 883 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). "A parolee, while free of the prison walls, still remains under legal custody." *Rabb*, 752 F.2d at 1324. And so, "a parolee arrest [is] more like a mere transfer of the subject from constructive custody into actual or physical custody, rather than like an arrest of a private individual who is the suspect of a crime." *Id.* (internal quotation marks and citation omitted).[11]

---

[11] As *United States v. Polito*, 583 F.2d 48 (2d Cir. 1978), reiterated,

> A warrant issued for the retaking of a person under [parole] laws proceeds upon an entirely different premise and serves a different purpose than in the case of a warrant for the arrest of a person charged with the commission of a crime.  A released prisoner is not a free man.  Prior to the expiration of his maximum term he is a ward of the Parole Board, subject to its control and care. . . . Consequently, it cannot be said that the retaking of a prisoner who is already within the legal custody of the authorities constitutes an arrest within the meaning of the constitutional provisions.

*Id.* at 55 (quoting *Story v. Rives*, 97 F.2d 182, 188 (D.C. Cir. 1938)).  *Polito* explains further:

> [A] warrant issued by the Parole Board for the arrest of a paroled prisoner is not to be judged by the same standards as a warrant for the arrest of one merely charged with crime . . . .  The prisoner's guilt of crime has already been adjudged, sentence of imprisonment has been imposed upon him, and the purpose of the warrant is merely to restore him to custody and to advise him of the purpose of his reincarceration.

(continued . . .)

In short, Cornel's arrest on February 2, 2018 was not illegal. Kauahi's uncontested affidavit, ECF No. 61-3, describes circumstances—the warrant was in custody of the Sheriff's Department Division, signifying that the warrant was still outstanding and needed to be served—that gave Kauahi a reasonable belief that Cornel was in violation of parole. *See Rabb*, 752 F.2d at 1324. Thus, Kauahi did not violate Cornel's Fourth Amendment rights when he arrested her.

      *b.*    *Fourteenth Amendment procedural due process violation*

The court, of course, recognizes that the seven-year gap between issuance of the re-take warrant in 2011 and its service in 2018 was not ideal. Although the arrest itself was not illegal under the Fourth Amendment, such a delay in service can implicate the due process clause of the Fourteen Amendment, even for a parolee. "[T]he conditional freedom of a parolee . . . is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not

---

(. . . continued)
*Id.* (quoting *United States ex rel. Nicholson v. Dillard*, 102 F.2d 94, 96 (4th Cir. 1939) (internal quotation marks omitted)).

be terminated absent appropriate due process safeguards." *Moody v. Daggett*, 429

U.S. 78, 85 (1976).[12]

"[D]ue process requires reasonable diligence in the issuance and

execution of a warrant for arrest for an alleged parole violation." *McCowan v.*

*Nelson*, 436 F.2d 758, 760 (9th Cir. 1970) (collecting cases). "[A] warrant for

arrest based on a probation or parole violation should be executed within a

reasonable time after issuance." *United States v. Hill*, 719 F.2d 1402, 1405 (9th

Cir. 1983). And "[a] court must examine all the circumstances of the case to

determine whether the warrant was executed within a reasonable time." *Id.*[13]

---

[12] The court addresses a procedural due process claim under the Fourteenth Amendment. To the extent the TAC alleges a *substantive* due process claim, it fails because such a claim must be analyzed under the Fourth Amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("If a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); *Tarabochia v. Adkins*, 766 F.3d 1115, 1129 (9th Cir. 2014) ("Because the actionable incident . . . constitutes a 'seizure' of 'persons' under the Fourth Amendment, it is properly analyzed exclusively under this constitutional provision and not under the broader concept of substantive due process.") (citations and internal quotation marks omitted).

[13] The HPA issued the re-take warrant under authority of HRS § 353-65, which provides in part:

> The power to retake and reimprison a paroled prisoner is conferred upon the [HPA's] administrative secretary or the administrative secretary's designee, who may issue a warrant authorizing all of the officers named therein to arrest and return to actual custody any paroled prisoner. The superintendent of Hawaii state prison, the chief of police of each county and all police officers of the State or of any county and all prison officers *shall execute any such order in like manner as ordinary criminal process.*

(continued . . .)

Nevertheless, a "delay between a defendant's violation of [parole] and the execution of the violation warrant does not, in and of itself, violate a defendant's due process rights." *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000).  This is because "*execution* of the warrant and custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole revocation." *Moody*, 429 U.S. at 87 (emphasis added).  "[T]he loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant." *Id.*  Rather, "the defendant's due process concerns about delay come into play only when the delay has prejudiced the defendant's ability to contest the validity of the revocation." *Sanchez*, 225 F.3d at 177 (quoting *United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir. 1996)).  "[A] delay in executing a violator's warrant may frustrate a [parolee's] due process rights if the delay undermines [her] ability to contest the issue of the violation or to proffer mitigating evidence." *United States v. Tippens*, 39 F.3d 88, 90 (5th Cir. 1994).

(. . . continued)

*Id.* (emphasis added).  In this regard, *State of Hawaii v. Owens*, 116 Haw. 172, 172 P.3d 484 (2007), held that Rule 9(c)(3)(i) of the Hawaii Rules of Penal Procedure requires service of arrest warrants "in both pre-conviction and post-conviction contexts without unnecessary delay." *Id.* at 173, 172 P.3d at 485.  The requirement in HRS § 353-65 that re-take warrants be executed "in like manner as ordinary criminal process" suggests that *Owens*—and its holding that a post-conviction warrant be executed "without unnecessary delay"—should apply equally to a re-take warrant.  Nevertheless, the court need not decide this matter of state law because the court applies a similar test under federal law.

Here, however, Kauahi could not have violated Cornel's procedural due process rights because the HPA *granted* Cornel's motion to dismiss the parole revocation proceedings (and ultimately reinstated her parole discharge date back to March 15, 2015).  *See* ECF No. 61-2 at PageID # 423-24.  Any prejudice Cornel might have suffered from the seven-year delay in service—for example, the inability to contest the parole violation through loss of witnesses or supporting evidence—became moot because the HPA *dismissed* the revocation charge and returned her to parole on April 19, 2018.

Further, due process protections were in place *after* she was arrested—Cornel had the right to a pre-revocation preliminary hearing to challenge whether there was "probable cause or reasonable grounds to believe that [she] had committed acts which would constitute a violation of parole conditions," ECF No. 61-9 at PageID # 436, that is, her failure to keep the HPA informed of her whereabouts.  But the undisputed evidence is that, on February 9, 2018, she waived her right to a pre-revocation hearing.  *Id.* at PageID # 437.  In doing so, she acknowledged that "I will be held in confinement pending a full hearing before the [HPA]."  *Id.*  Cornel also invoked a right to counsel, and later appeared at the revocation hearing with counsel.  *Id.*  These procedures fulfilled her right to due

process.[14]  *See, e.g.*, *Morrissey*, 408 U.S. at 485-89 (discussing minimum due process requirements for arrest and revocation of parole).  There was no due process violation for any loss of liberty between February 2, 2018 and April 19, 2018.[15]

Accordingly, because there was no constitutional violation, Kauahi is entitled to summary judgment in his favor as to the § 1983 claims in Count Five.[16]

### 3.   The Remaining State Law Claims Against the HPA and State of Hawaii Also Fail

The only remaining claims are state law claims against the HPA and State of Hawaii for false arrest, intentional and negligent infliction of emotional distress, and gross negligence.[17]  Ordinarily, because the court has now dismissed

---

[14] The full panoply of rights is set forth in Hawaii Administrative Rules §§ 23-700-41 to 700-44 regarding "Revocation of Parole."

[15] Moreover, it is undisputed that after Kauahi arrested Cornel and transferred custody to prison authorities, he had no further involvement with her.  He had "no input into or knowledge of her parole proceedings."  ECF No. 61-3 at PageID # 427.  Thus, he could not have caused any due process violation that might have occurred after February 2, 2018.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

[16] And because there was no constitutional violation, Kauahi would also be entitled to qualified immunity as to the federal claims.  *See, e.g*., *Pearson v. Callahan*, 553 U.S. 223, 232, 236 (2009) (reiterating that a defendant is entitled to qualified immunity if there was no constitutional violation or if the relevant law was not clearly established, and clarifying that a court has discretion to decide either prong of the test first).

[17] The court considers claims against the HPA to be claims against the State of Hawaii because the HPA is a state agency.  *Cf. Trotter v. Hawaii*, 2018 WL 912255, at *5 (D. Haw. Feb.

(continued . . .)

all federal claims, the court would decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").  *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point towards declining to exercise jurisdiction over the remaining state-law claims.") (quotation marks and alterations omitted) (en banc).

Here, however, judicial economy favors retaining supplemental jurisdiction—the case was filed in state court over two years ago, the court has spent considerable time analyzing a confusing record in two substantive motions (and has already addressed several state law issues), and the remaining state law questions are straightforward.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

(. . . continued)
15, 2018) ("[T]he Hawaii Paroling Authority is an agency or instrumentality of Hawaii for purposes of Eleventh Amendment immunity[.]").  The court assesses State of Hawaii liability for state torts for acts of the HPA and of Kauahi in an official capacity.

Initially, the State of Hawaii cannot be liable for false arrest/false imprisonment.  Given its sovereign immunity, the State is only subject to tort liability under the State Tort Claims Act, HRS ch. 662.  *See* HRS § 662-2 ("The State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.").  And HRS § 662-15 codifies exceptions to such liability, providing that the State Tort Claims Act "shall *not* apply to . . . (4) Any claim arising out of . . . false imprisonment [or] false arrest") (emphasis added).

Next, Plaintiff's claim for IIED fails because her arrest under the re-take warrant was valid.  "Under Hawaii law, the elements of IIED are '(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'" *Enoka v. AIG Haw. Ins. Co.*, 109 Haw. 537, 559, 128 P.3d 850, 872 (2006) (quoting *Hac v. Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003)). "The term 'outrageous' has been construed to mean 'without just cause or excuse and beyond all bounds of decency.'"  *Id.* (quoting *Lee v. Aiu*, 85 Haw. 19, 34 n.12, 936 P.2d 655, 670 n.12 (1997)).  "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where

reasonable persons may differ on that question it should be left to the jury."

*Shoppe v. Gucci*, 94 Haw. 368, 387, 14 P.3d 1049, 1068 (2000) (quotation marks

and citations omitted).

But given that Cornel's arrest was valid and lawful, nothing can be

considered "outrageous" for purposes of IIED.  She had not served her sentence

and her parole had not been discharged.  She was subject to arrest, and there were

no constitutional violations.

For similar reasons, the negligence-based torts fail.  There are four

elements of negligence under Hawaii law:

> (1) A duty, or obligation, recognized by the law, requiring the
> defendant to conform to a certain standard of conduct, for the
> protection of others against unreasonable risks; (2) A failure on
> the defendant's part to conform to the standard required: a
> breach of the duty; (3) A reasonably close causal connection
> between the conduct and the resulting injury; and (4) Actual
> loss or damage resulting to the interests of another.

*Molfino v. Yuen*, 134 Haw. 181, 184, 339 P.3d 679, 683 (2014) (quoting *Takayama*

*v. Kaiser Found. Hosp.*, 82 Haw. 486, 498-99, 923 P.2d 903, 915-16 (1996)).  And

NIED "is nothing more than a negligence claim in which the alleged actual injury

is wholly psychic and is analyzed utilizing ordinary negligence principles."  *Doe*

*Parents No. 1 v. State of Haw., Dept. of Educ.*, 100 Haw. 34, 69, 58 P.3d 545, 580

(2002) (quotation marks and citations omitted).  Absent certain unique

36

circumstances, "an NIED claimant must establish, incident to his or her burden of proving actual injury (i.e., the fourth element of a generic negligence claim), that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else." *Id.*, 58 P.3d at 580 (internal citation omitted).

"Gross negligence is an aggravated form of negligence, which differs from ordinary negligence only in degree and not in kind." *State v. Bunn*, 50 Haw. 351, 358, 440 P.2d 528, 534 (1968). "In Hawaii, courts recognize gross negligence as 'an entire want of care which raises a presumption of conscious indifference to consequences.'" *Nicol v. Kaanapali Golf Estates Cmty. Assn, Inc.*, 2020 WL 6302363, at *8 (D. Haw. Oct. 6, 2020) (quoting *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1234 (D. Haw. 2010)).

Here, the HPA owed no duty to Cornel not to arrest her for an alleged parole violation. It breached no duty by arresting her. The arrest caused no "physical injury" for purposes of an NIED claim. And even if the HPA had some duty not to serve a re-take warrant seven years after it was issued (i.e., to have found her earlier), arresting her caused her no damages (or damages are entirely speculative) where she was subject to arrest in any event. That is, even if Kauahi had arrested Cornel earlier, she would still have been subject to the same loss of liberty. In short, the negligence claims fail because Cornel was lawfully arrested.

## V. **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motion for

Summary Judgment, ECF No. 60.  The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 17, 2020.



　　　　　　　　　　　 /s/ J. Michael Seabright
　　　　　　　　　　　 J. Michael Seabright
　　　　　　　　　　　 Chief United States District Judge

*Cornel v. Hawaii et al.*, Civ. No. 19-00236 JMS-RT, Order Granting Defendants' Motion for
Summary Judgment, ECF No. 60